Thank you, Counsel. Sorry for the change-ups, the audibles. Good morning, Your Honor. Sean Unger for the appellant, Nike. I have with me my colleague, Daniel Prince. We're not going to chop up time, but he handled the matter in the district courts. I wanted to introduce him to all of you. I'd like to reserve five minutes for rebuttal, and I'll do my best. These two appeals ask important questions to which the district courts below need answers. They ask questions about standards. They ask questions about protections, and they ask questions about power. Unfortunately, but respectfully, we think the district court got the answer to those questions wrong. As to sealing, under this court's law, the district court below misunderstood the impact of Chrysler. This circuit follows a dispositive versus a non-dispositive test for determining the standard on sealing. The Kennedy does, but it follows a dispositive versus non-dispositive test that has been modified in Judge Owen's opinion, clarified in Judge Owen's more recent opinion. I read your briefing a little bit, like you just really didn't like that decision, but it's binding on us, correct? So I think that Chrysler informs the dispositive versus the non-dispositive test. In ground zero after Chrysler, you can look to this court pointing back and using the dispositive language as the test. But we don't dispute that Chrysler informs when something can be dispositive, and that is tangentially related to the merits test. But it's important to view that question through the lens of the dispositive versus the non-dispositive, because what Judge Owen's fractured decision for the court did. Let me start, then, on that issue of, as I read your briefing, you say case law is crystal clear that class action, the class cert decision, is separate from the merits inquiry. And there is a sense in which that's true, as I understand it, and I used to do class action work, so there's a sense in which that's not true. Part of the reason why courts have stressed that so much is because, as no doubt you're aware, there was some confusion where courts at the Rule 23 stage thought they couldn't address any issue that might overlap with the merits. Are you following me? I'm totally with you. And then the Supreme Court came in and said, no, no, you can address those issues. Just because they overlap with the merits doesn't mean you can't address them. And so, but you don't need to decide more than you need to decide. And in fact, when you get to the merits, you're not even necessarily bound by what you decided at the Rule 23. But it seems like your argument, as I read your argument, you're sort of ignoring the fact that it doesn't have to, but the Rule 23 inquiry can overlap with the merits. You would agree with that, that it can. Put aside this case, but that it can. There can be merits issues in a case that are also relevant to predominance, commonality, typicality, those type of things. I was with you and now I'm going to quibble with you, if I may. The point coming out of Walmart and the other decisions that allow the court to address factual issues that speak to the merits in the class certification motion was only to inform the court that in ruling on class certification, you're not precluded from ruling on certain facts. What kind of facts? We say certain facts. Facts that speak to the class certification standard. They may also later speak to the merits, but as you rightly recognize, they may not. That's why I was asking that, because that's what I'm characterizing as overlapping with the merits. In fact, they may be exactly the same in that slice. But your question was right to recognize they're not binding later. And in that context, they're not serving the merits. In the same way that if I file a motion to compel in discovery, and I say, here's a relevant fact. But they don't decide the merits. I would agree with you on that. But if our inquiry is whether something is wholly separate from the merits under Chrysler, if that's our inquiry, and maybe you dispute that, but if that's our inquiry, it seems to me that it would be a case-specific inquiry, whether class, it seems to me like you want to make an argument that class cert is just never, like a bright line rule, that class cert never reaches the merits. And since class cert and the merits can overlap, it seems to me like we just have to look in an individual case. So I disagree, which won't surprise you, but I'm going to disagree for a couple of reasons in different directions. First, I want to go practically for the district courts. The rule of dispositive versus non-dispositive is actually quite helpful to district courts and litigants to know the standard they're supposed to meet. And so enabling a rule that allows for a lot more case by case doesn't tell the litigants what they're supposed to do beforehand. It only tells them they failed after the end if they applied the wrong standard. So for this court, thinking about it, bright line rules are much more helpful. Second, on the overlap, there can be overlap on non-dispositive motions as well. I think the court would agree that a motion to compel discovery typically is a non-dispositive motion. And even post-Chrysler would be a non-dispositive motion. A motion to intervene, non-dispositive motion, court has already held that. We cited that in the brief. Lower standard applies. In both of those contexts, court can make factual findings. Those factual findings may also later go to the merits. So instead of asking where something goes, we should be asking what's the motion doing? That's really what Chrysler was looking at. What's the motion doing in practical effect? And the motion on class certification is not ruling on the merits. It's barred from ruling on the merits. Can't grant relief in class certification. That's a later question. There's whole rules. The rule against one-way intervention is informing the litigants that we've decided class certification, but we haven't decided the merits yet. So it's not stacking the deck in one way or the other. So that if there is certification, the absent class member isn't told you're going to win, you're going to lose. They're just told you're now a member if you choose to be. It doesn't seem like maybe the line is as bright as it seems. We've carved out preliminary injunctions. Chrysler talks about motions in limine and Daubert motions. Why isn't it a better understanding to think that by referring to dispositive and nondispositive, we're discussing about the difference between discovery motions and materials, which may not ever reach any dispositive issue in a case, versus the whole range of other proceedings where the presumption of public access applies? So I think we have to take the law as we find it. We take the law from comma, comma, Phillips, Foltz, et cetera, dispositive versus nondispositive, as the test informed by Chrysler, tangentially related to the merits. But we look at what Chrysler did in that analysis. It said preliminary injunctions is granting substantive relief. And what it's saying on the motion in limine is that we've been in trials before. And you can make a motion in limine to exclude all evidence on a particular claim. If you win, that claim is out. I'm sure your colleague has ruled on motions like that. If you rule on a Daubert motion. So you are seeking the benefit of a good cause standard. I'm trying to track the question. We're saying the good cause standard applies. The good cause standard derived in this case's case law, recognizing that the court wanted to promote efficient promotion, to promote, I said promotion twice, efficient exercise of discovery and allow the protective order to more broadly encourage discovery so that concerns about producing information that may be on the edge of cases could be covered. And not worry that then that information would become public in a public forum without a heightened standard and speaking to the merits. So it's just common law all the way down. This isn't rooted somehow in our obligations under the Federal Rules of Civil Procedure to govern discovery. No, I'm not going that far. I would agree with you that the federal rules inform the analysis as well. But it's a synergy between the federal rules and the common law. And I wouldn't dispute with you on that. I guess maybe we should turn to the second case. What, we'll have similar questions, I think, for your friends on the other side. But as I read Nike's motion with respect to, well, I guess let me ask, for me, one last question on the first case. Nike says, well, we shouldn't have to put in declarations. We shouldn't have to get specific about who the people are. But in reading the arguments you've made to satisfy whatever standard it was, there's really no evidence at all. It appeals to common sense. You focus on a particular example of conduct where attaching the names would be particularly detrimental to the party's interests. But there's actually no citation to that either. It's just the fact that it's been that we don't even know whether the people involved are themselves claiming a privacy interest in that. So why should that be enough when the district courts seem to require a little bit more to carry your burden of proof? So I would disagree with you that the district courts do require more to meet the burden of proof. And I assume implicit in your question is if the compelling interest standard applies, have we met it regardless. I'd point to Volkswagen and Hunt as district court cases as demonstrating that courts recognize that names, and it's really important here, we're only talking about names. And we're talking about names of non-litigants. We're not talking about the plaintiffs. And we're talking about Nike. Nike has allowed the conduct to come in. Right. You see, given the cases, if we were to adopt this bright line rule that you're discerning from the cases, that names of non-litigants are always enough to overcome disclosure, that could be a little sweeping given the presumption we're operating under. So I'd point your honors to Fultz. I'd point your honors to the Tenth Circuit in Brigham that this court and other courts have recognized that there are some types of information, personal information about non-litigants that the court can look at and say, you don't need the names to be public. That's a privacy interest. But did Nike make any distinction between, for example, the executives and people who might have been more at the center of the allegations with respect to harassment and less at the center? It was just no names whatsoever. There was no attempt to kind of parse that to figure out, well, there might actually be a little more of an interest in disclosure of some of the higher ups and maybe a little less for the people who got kind of mixed up in reporting that they thought might be confidential. So your honor, I don't believe that, and I dug into this question, as you might imagine, that any manager, direct manager was implicated. And in a pay equity case, that person who makes that decision and that might, we will acknowledge it would lead to a different analysis. But if what you're saying is there should have been more parsing, that too would lead to a remand for consideration under that standard. Now switching to the Second Appeal recognizing I've got three minutes to try to reserve for that rebuttal. We think the district court got the question wrong on its question of power. And we acknowledge that the First Amendment looks like a spectrum. And we're arguing we're not in the spectrum. Zemel says there's no First Amendment right to gathering. Seattle Times says there's no prior constraint concerns when enforcing a protective order. There's Bartnicki. Bartnicki is when the press gets a document from a stranger, the prior restraint doctrine applies. Well, those are limitations on the district court's power. Could you speak to the power in the first instance, whether either under inherent power by the status of intervention or via the protective order incorporation, any of those things provide the power in the first instance for the district court to do what you'd asked it to do? So you're singing my tune. I think Your Honor that- Come a few more bars. Here I go. The media intervenors subjected themselves to the jurisdiction of the court. And for nearly a century, the Supreme Court has recognized that if you're in for a penny, you're in for a pound. If you subject yourself to the jurisdiction of the court, you're subject to the jurisdiction of the court. Does it matter at all that, you know, so I hear your arguments on that. And most of the time you think of somebody getting the documents through some sort of mistake related to discovery, right? You send over your privileged documents, you're like, I want them back and the court can order them back because they're, or maybe you send them to the wrong party and the court could order them back. But here it was kind of a, they did give it to another party, but they gave them to another party, excuse me, in like a, it's not even like they were trying to give them to a party. They just showed up at a, turns out that they happened to be another party. Does that make any difference? In other words, they gave them to a reporter, but the reporter happens to work for another party. I have a yes and a no answer to that. Yes, it matters in that it strengthens our argument. No, it doesn't matter in that it's not required. That is what? No, it doesn't matter in that it's not required. So yes, it is helpful that it was given to another party. The court in ground zero, in this court in ground zero recognized the fact that the, one of the parties was a party status, allowed greater flexibility under the First Amendment and bringing the courts up. I think we'll rely on the, I'm hearing a lot of, on the Second Circuit case, the aiding and abetting, but there was some, I mean, the facts in that case, there was some aiding and abetting, you know, it looked like this big thing they'd set up in order to try to get the documents to the New York Times. And here, I guess, there's not the same sort of, at least reading it. Now, I think your response to that might be like, we were never given a chance to do discovery, to find out if there was any aiding and abetting, so. So, humming my tune again on the discovery point, but what I would also point is independent of that, is that the press here is going to a litigant, and they're going to the litigant's counsel as a source. So, are the facts as extreme as In re Zyprexa? Zyprexa was- But your argument, if that, I'm not sure that you need to have this to win, but because they are a party, but your argument is that even if they weren't a party, if the press goes to a party who has the documents because of the court basically said, you've got to give them to this other party, then, and they turn it over, then that's just not covered, even- I would think, your honor, on the doctrine of judicial restraint, you would probably rule in the first instance that they had the power because they were a litigant. If you went beyond that, we win under Zyprexa and Lilly. That's my argument. You probably don't have to get there for me to win, but if you get there, Nike wins. That's the premise of the argument. Well, I don't know if my colleagues have a lot of interesting issues here, and I'm sure we'll be able to get to them on Reba, but why don't we, do you want to save your time for- I do, thank you, your honor. Thank you, your honor, Grace and Clary for the media interveners. And plaintiff's counsel asked me to inform the court that they're resting on their brief on the unsealing issues, but that plaintiff's counsel is available to the extent the panel has any questions that are specific to the plaintiffs. On the district court's unsealing order, any practice guide would tell you, and the Supreme Court likewise pointed out in deposit guarantee, class certification is typically the most important moment in any period of class action. And the evidence that we're talking about in this appeal is not just submitted by the plaintiffs in connection with their motion for class certification. It was specifically addressed by the district court in its class certification decision, and the district court, intimately familiar with the record and the role that these records had played in the judicial process, concluded that Nike had not carried its burden to justify redacting that evidence. What more would it have needed to do? Did it need to submit declarations, an expert witness report? What was missing? So I think there are a few kinds of evidence that could have been sufficient. And so contrary to my colleague, I don't think this case asked the court whether they needed declarations from the third parties in particular. I think the question is actually whether they need something rather than nothing. So a couple of examples, Nike could have submitted evidence, for instance, that any of the individuals who have already been very prominently associated with misconduct at Nike, whether in press reporting or by Nike itself, have in fact confronted harassment or issues like that. I think in other cases, litigants trying to show a privacy interest have suggested, for instance, that they face a concrete danger that they'll face employment consequences. Well, how do they do that, given that the media's out in front of this case without worrying that they'd actually kind of further be at risk of further disclosure? How do they come forward? Are you aware of any processes in the district court, and I think you're probably the one to answer this, where they can take account of individualized privacy interests without that itself being swept up in the unsealing or disclosure? Certainly. So I've seen a couple of examples in my personal practice, and then I'd point you to a few others from the court's case law. So there in fact are cases, I don't believe it's cited in the briefing, but this court's decision in the Roman Catholic Archbishop of Portland matter, where the court has received pseudonymous declarations from third parties in exactly the kind of context that Nike says it's impossible to provide that showing. That case likewise involved accusations of sexual misconduct. I've also seen district courts have the party litigant relay the positions of third parties. So as your honors may know, this court recognizes a presumption of access to warrant materials after they're unsealed. Warrant materials constantly implicate third party privacy interests, but you also wouldn't be able to make any sense of them if you didn't have some public access to allegations about what third parties have done. Typically what U.S. attorney's offices will do is they'll be the ones to contact the third parties, and then they'll relay to the district court what position those parties take. So I think there were a lot of options here. Nike could have, if it wanted to substantiate the claim that there'd be a chilling effect on the complainants, even though most of these names are not complainants, they could have presented evidence that there's already been such a chilling effect, again, in light of all the public attention that these starfish surveys have already received. And I think the issue here is that not only was there no evidence here showing, there was, as your questioning was drawing out earlier, not even an effort to link Nike's specific claims of harm to the specific information at issue. Nike talks a lot about how stigmatizing it is to be accused of sexual misconduct, but some of the redacted names are just in the context of claims about pay inequities, which aren't nearly as stigmatizing. Nike talks a lot about complainants and witnesses, but many of these documents don't even have a complainant name on them to redact. There's a possibility of a more tailored request below, but Nike didn't request any such tailoring in terms of disclosure or nondisclosure. I think Nike, that's right, I think Nike had a lot of options available to it in terms of how it could have gone about trying to offer something. And that's true whether we look at this as a good cause or a compelling reasons case. Though I guess on that, should we worry about, set aside the mechanics of the Chrysler and other rules about what side of the line a class certification falls? Class certifications, almost by their nature, involve vast numbers of persons who are non-litigants and are otherwise potentially quite remotely attached. And of course, because it's class certification, the litigants, the parties, their counsel, don't necessarily have the same tools at their disposal to identify those people for clearance, right? They don't really have a stake in the matter until after we get past that point. Should we be worried that class certification is a different animal altogether with respect to this vast disclosure of non-litigants' names? I'm not sure I see why, especially since the evidence at issue in this case is pretty tractable. The actual documents at issue only occupy something like 50 pages in the excerpts of record. And within that, we're only talking about the redactions of a couple dozen names. But you're asking us to draw a bright, I mean, the way, as I understand, or at least the assignment of the burden is categorical. And so there could be cases in which there are 10,000 or more, even in employment class actions or healthcare class actions or other class actions, where there'd just be vast numbers of non-litigants whose information is potentially exposed to the disclosure who have maybe no practical way to assert those interests. I don't think that's a... Kind of a piggyback on that. I didn't, I want to make sure, are you asking us to draw sort of a bright line rule about class cert that basically, class cert will always be compelling reasons? Or are you saying that class cert can be compelling reasons because it will overlap with the merits under Chrysler, but not necessarily, and I guess your argument would be in this case, it does. But it's a case-by-case inquiry. What are you asking for there? Well, I'll take your question first, if I can, Judge Van Dyke, and then get back to Judge Johnstone. So I think this court has used both lenses without making either one of them exclusive, and our position is that either one would be satisfied here. So if you look at Center for Auto Safety, for instance, in concluding that the presumption of access attached, this court canvassed the range of things that preliminary injunctions can do, from a separation of powers case to a death penalty cases, in concluding that that was something the public needed to be able to understand. By comparison, if you look at the Midland case on Daubert motions, this court looked at the specific Daubert motion at issue, and its stakes for the individual litigation. I think you get the same result here through either lens. And I think- In this case. In this case. And I think the reason goes back to the following. I'm sorry, but I'm envisioning that, so I've kind of jumped on your question, but I'm envisioning like class cert could, in theory, go off on typicality, right? You just say, you know, the name plaintiff is just not typical at all. And there was a ton of discovery into this name plaintiff's typicality. And in theory, that wouldn't go to the merits of the class cert, you know, it could go to all kinds of issues that would really be kind of relevant. And maybe the newspaper would want to write an article about this name plaintiff, but they don't necessarily go to the merits. So it seems like under the underlying basis for this rule, which is the public has an interest in the merits of the matter, maybe it wouldn't be met in a case like that. And it wouldn't necessarily be compelling reasons under the logic of Chrysler building on these other cases. So that's why I thought it would be more of a case by case, at least as I'm reading the logic of how Chrysler arguably extended our dispositive, nondispositive. Does that sound right to you, or am I missing something? Well, so you won't be shocked to hear that we would like the broader rule even better, even as we think that both of them resolve this case in the media intervener's favor. Let me offer you a reason for thinking that it'll be typical and not just occasional, that class certification will overlap with the merits in the way that brings that presumption of public access into play. And then I realize I'm running low on time, but I will try to get back to Judge Johnstone's question as well. Well, I don't think you need to, I agree with you that based on class search stuff I've done that probably more often than not, almost always there's some overlap with the merits, and that'll just be an inquiry. I'm trying to get a view of whether you're saying, yeah, regardless though, even if it's an issue that's very much not related to the merits of the matter, that we still think that class, anything that's relevant to class search is, because class search, as I read your briefing, because class search is really important, and I don't disagree with you about that, but really important doesn't seem to me to be the standard. My only reason for sort of resisting the suggestion that the narrower lens is exclusive is the point Judge Johnstone was raising earlier about dispositive versus non-dispositive is a language this court has really used to distinguish discovery and non-discovery motions. So I think what this court has really used that not more than tangentially related to the merits to the case standard to say is the fact that discovery material is according to one party relevant, even though it might turn out not to be, isn't enough of a nexus to the merits to justify bringing that presumption of public access into play. But this court has really only applied it, at least in precedential decisions, to discovery material. Foltz's discovery, Phillips's discovery, more recently this court's decision in United States v. SLU, third party criminal discovery material, and Center for Auto Safety I think strongly suggests that the mirror image of more than tangentially related to the merits is just discovery motions and materials unrelated to the merits. So I think if you take that view of what the court's precedent says, and we think it's the best reading of it, then that would imply that class certification motions in general as non-discovery motions are subject to a presumption of access. I think we've- Well, I guess, yeah, just briefly, and then consequences. Yes, back to my question. Yes, so, can I try to restate your question to make sure I recall what it is? You're asking if we're asking for a class certification specific rule on the second stage of the analysis in terms of whether or not the presumption is overcome, where Judge Van Dyck was asking about our position on the first stage, whether the presumption of access attaches. So I don't think we're asking for a rule that plays any differently in class certification, because this court has dealt on a number of occasions with very voluminous redactions to other judicial records. Summary judgment can draw in quite a lot, but has always insisted that that compelling reasons showing be specific to the redactions sought. I think the best example of this is this court's decision in Kamakana, the city and county of Honolulu. You had a very large body of material there, which is why, understandably, the United States had tried to economize on justifying its redactions by just listing the interests that were at stake, privacy, third party, that kind of thing. But this court still said, not good enough. The showing needs to be specific to the material you want to keep under seal. And I do think, in large cases with a lot of information, that means more of a burden on the parties, but that's what this court has consistently demanded. And so, I think the issue in this case is Nike, a lot like the parties in Kamakana, simply listed the interest it thought was at stake. It didn't provide evidence of any kind to back that claim up and so, either under the common law presumption of access or under a good cause standard, we think the district court got the question right. All right. Well, thank you, counsel. We'll hear from Mr. Hardin. Yes, thank you, Your Honor. I'm Ed Hardin. I represent Advanced Publications, which is the Oregonian newspaper, at least in part. It's very clear that the district court judge, two judges, Judge Rousseau and Judge Hernandez, got it right. In the February 28, 2024 order from Judge Rousseau, she found that there was, in fact, a prior restraint. It was an unlawful prior restraint, fit all the qualifications, and that there were absolutely no specific circumstances to allow for extraordinary circumstances to allow for a prior restraint. Why doesn't Seattle Times control? Seattle Times doesn't control for several reasons. Number one, it involves parties. In this case, I'll come back to it, the Oregonian was not a party. The Seattle Times also has circumstances which relate to several things. One, the litigant, primary litigant in the case, the Seattle Times. So in this case, we're not a litigant. The Oregonian was not. Second, I think we've, maybe to cut to the central question I have about your position, we've often referred to interveners as litigants. For example, I think your friends on the other side make the point that if you'd suffered an adverse judgment on any of these issues, presumably you would have claimed the right that interveners often claim to appeal or to do other things that parties get to do as litigants. So why are you not in for a penny and for a pound once you decide to intervene, at least in this instance, where the subject matter of the information is even if you're an intervener for a limited scope, goes directly to that scope? Well, first of all, the imposition of a pretrial order, which was what the ruling in Seattle Times was, it dealt with whether they could impose a pretrial order. In this case- But did you think when you intervened, you would not be subject to scheduling orders, protective orders, everything else that the court had entered before? Sure. Well, absolutely yes, in this case, because the court allowed the intervention to, as a non-party, they're very specific on that, and second, the Oregonian advance publications never had the ability to get any of the pleadings that were filed in the court. There was a specific exclusion of them being able to get any, so they could not be subject to them because they couldn't see them. So let me ask you a little, because I'm trying to, and so I'm not talking, I don't want to ask questions about whether a protective order covered you, because that's one argument would be that you're covered by a protective order and you're saying no, but I just want to go to the inherent powers of the court over litigants in front of it. And it seems to me that your argument, if accepted, could create some real problems for when courts make mistakes, since courts have humans and they make mistakes. So if, let's say you had three parties in a case, but you're not supposed to give certain materials to the one party, because of confidentiality concerns, and the clerk of the court just screws up and gives the materials to the party it wasn't supposed to, right? You know, there's one party, there's two parties against one, but you've shared the materials between, so kind of like this case, but the clerk is the one that makes the mistake. And the clerk was supposed to send some materials out, maybe some non-redacted order that had, and send it to the wrong party. Do you think that the court's inherent powers would allow it to say, return those materials that the clerk inadvertently gave to you because you're a party in the case? And do you think that, and so just that circumstance. I think because you're a party, and a party litigant, which are the cases that cited by Nike refer to, which is where you are an active party litigant, can the court say get those back? And I believe the answer is yes. Okay, so you do agree that if there was a party that wasn't supposed to get these materials and the clerk messes up and gives those materials to you, then the court can claw back those materials and you don't have a First Amendment right to say that's a prior restraint. Because under these cases it says you only got those materials because you were a party in the case, so. Only if you're a party to the case and an active party litigant. I understand, because you are a party in this case, but you're saying you're a different kind of party. I mean, it's semantics, but you're saying, I mean, you're obviously a party for some purposes. You're a party who could have appealed. And so, but you're saying, but I'm just trying to get a feel for for what your, where this would, where your argument would lead to. What about taking my hypothetical and parties are sharing materials between each other, right? And a party screws up and sends materials, not through a reporter at a clandestine coffee shop meeting, but actually to the wrong party, just sends these materials to the wrong party. And there's multiple parties and some of them are not supposed to, and that instead of the clerk making the mistake, a party does. So can the court say, no, that's this party in the litigation needs to send those materials back and you can't go public with them, et cetera? I don't believe so. And here's the reason. So that's where you would draw the line. You think the court, the inherent powers allow the court, if the court inadvertently discloses them, but not if the, not if a party inadvertently makes a mistake in disclosing. In the case where a party discloses it to, in the news gathering process to a newspaper, media organization. No, my example, make sure you understand my example. My hypothetical is, it's not a newspaper, let's put that aside, because that sort of distorts the, it's just a party that wasn't supposed to get these confidential materials. There's multiple parties and one of them was not supposed to, but in sending out the materials, the other party on the other side screws up and sends them to the party they're supposed to, but also their paralegal accidentally sends them to the wrong party. Will the court's inherent powers allow the court to order, well, return those materials? Well, I think the rules applying to the profession would require an attorney to give those back if they were sent to the attorney. That's part of the act of interrogation. But the professional rules are, I think the First Amendment would trump professional rules, don't you think? I believe it would, yes. But the rules would require that and would require that return. But are those rules unconstitutional, is my question then. No, I don't believe so, Your Honor. I believe that as a party to, and as an attorney, for instance, which is what you're talking about. So I'm trying to get, so I'm sorry, but we don't have a lot of time. I'm trying to figure out where the line lies on your, because it seems like ultimately, if you kind of agreed with all that, maybe you do and don't in a certain way, but at the end of the day, it seems more like because it wasn't given through a court process, it was given to a different party outside the court process, that that seems to be what you're relying, I mean, you're relying on two things. You're saying we're not a party because we're just an intervener. It's not a party. But then, is that your whole argument or is there something else? Well, I think it's very clear in this case because the court found that there, this was not the use of a court process. I mean, it specifically found not the use of a court process. So that's what my question is we're gonna get at. If the party just, one party just randomly sends it to another party and it's not, but I thought earlier you said, well, if a party sent it to another party accidentally, I mean, you could say that was outside the court process because you're not doing it because the court ordered you to. In fact, the court told you not to. Well, I don't think that's the court process that the First Amendment is dealing with and all of the cases, whether it's Martucci or the Zyprexa case, for instance, where they're dealing with, it's news gathering, which is the key end of the First Amendment. But I guess I take the, just this is a question of the power. There may or may not be First Amendment constraints on the court's power, but your assertion is that the judges in this case, a federal district judge, federal magistrate judge, in the event of an inadvertent disclosure of information to an intervener, that the federal district judge has to wait for the state disciplinary process and professional responsibility process. Those are the only obligations that would require the counsel for the intervener to order their client to give it back. The district judge has no inherent power over that information. It was only produced by, but for the litigation. Well, I don't believe if it's produced outside of the court process, which is key here and it was key. It was discovery documents. How is that outside of, I guess I'm trying to understand what do you mean outside of the court process? These were, this was discovery that was produced within the court process, produced to another party, in this case, an intervener. Well, it's outside the court process because this was a process of news gathering. Well, his question is, would you say it was inside the court process that the paralegal accidentally sent them, but if you meet at a coffee shop and just give it to them on a PDF, you see why we're struggling, what do you mean exactly by outside the court process? It seems like that would be a weird, that's a hard line to police, whereas giving materials from one party to another party, maybe a certain kind of party, but an intervener party, it seems a lot more clear. If the paralegal gave it, or the attorney, as in this case, gave it, to the outside party, then that is, in fact, protected under the First Amendment. It is not part of the court process. The judge said this has nothing to do with the court process. So it sounds like you're reverting to, and it sounds like most of your argument is turning on, and we're trying to nail this down, I think, but your argument really turns on the fact that you're not a party, that that's a huge part of your argument. Because if you are a party, it sounds like, you have two arguments. One is we're not a party, and the other is in or not in the court process. And we're struggling more with what you mean by in or outside the court process because of, because in other words, you could say, if I give it to you as counsel, that's in the court process. If I give it to your client, which is what happened here, that's outside the court process. Where is that line at, in and outside the court process? It was not given to a client in this case. This was strictly a reporter who approached this person about a non-litigant. What if it had been given to the president or the CEO of the news organization? Would that be the client? So I'm trying to figure out, again, what your line is. Is that both are employees of the party, if we're assuming for a second they're a party. Both are employees. You would still have the First Amendment protection if it were to the CEO of the Oregonian or the CEO of the advanced publication. You would still have that First Amendment protection. And what the court did here was say, this would be, one, a prior restraint, and number two, you don't get out of the prior restraint by any special circumstances. In fact, they found there were none here in this case. So I think we understand what the court did. Do we have any more questions? No. I think we've kind of taken over your time. Very interesting issue, and we'll let your colleague come up here and respond. I appreciated the extra five minutes. Yeah, thank you. I'm in an interesting position in that I have a lot to say on two different appeals. So I'm going to motor mouth a little bit. You give me a flag if I'm going too quickly. On the sealing appeal, this court has already recognized in SLU, United States versus SLU. We cited it in the reply brief that overlap isn't itself enough to change the standard from good cause to compelling reasons. You really need to look at what the motion itself seeks. What the motion itself seeks, is it a procedural request or is it a merits request? And class certification is a procedural request. The other thing I'd like to flag in response to Judge Johnstone's question is the practical. Many of these employees have left. Nike's ability to get declarations from those people would be challenged. Many of these complaints were anonymous and accusations were slanderous. And individuals would have to be informed that an accusation was made against them. There's also the practical that this is all happening in the timeframe of a case. And the ability of a litigant to react that quickly is challenged, particularly when those employees are no longer there. Instead, what Nike is doing is what a good employer to do and in trying to protect the identity of non-litigants. To Your Honor's question though about merits, one question that I'd like the court to grapple with is shouldn't the standard be known before the papers go in? In other words, Your Honor was asking, what if we rule on typicality? Well, Nike and the plaintiffs won't know that until after the court rules. Instead, if you follow a test that says, class certification really is- Inherent in my question was, I guess I meant like, if that was the main issue and that was what all of the discovery and such related, the class discovery was all about the typicality of that was the only issue. It was a very, which would never be the case. If you think about it, Your Honor, here, class certification was denied. And so if class certification is denied following the logic of looking until it's the end, it didn't overlap with the merits. There wasn't a common question on the merits that was presented. So instead, which if you follow that- So here's, and really the other issue is more, but one thing we didn't, I didn't talk with you about the first case when you were up before is, the problem is, and this is what Chrysler says, is the standard is really asking, the public has this First Amendment right to learn about the stuff that's underlying the merits claims of the case. That's why we have this merits. And we had dispositive, non-dispositive, but that was a pretty loose fit on merits. So I don't know that I disagree with you that it's a lot more bright line rule, merits or dispositive versus non-dispositive, but it seems like, I mean, that bridge, that ship has sailed, the bridge, we're over that bridge because of Chrysler. And so if what we're asking ourself is, does this go to the merits? Because that's what the public has a First Amendment right to, that's what this compelling interest. Then if the class third issues go to those issues, then it's a bit formalistic to say, yeah, but the case wasn't decided on. It seems like that's where Chrysler's pushed us, but I don't, I mean. I'm gonna give you 15 seconds and then switch to the other appeal recognizing that I have things to say on that one. But what I would say is, is that this court has the opportunity, given the fact that there's a bedrock line of cases, Phillips, Kamikana, Fultz, up to Chrysler, which Chrysler is informing on the dispositive versus non-dispositive, to look at Chrysler, a fractured decision, 1-1-1, and say what Chrysler was really suggesting is was merits relief granted or sought? Motion in limine. Exclude all evidence on claim one. That's a merits motion. Dalbert. We need to talk about this intervener party issue before we're done. Did Judge Hernandez limit, I mean, when he granted, I'll go back and look at the record, but the order allowing the intervener into the case, did he limit them to the extent that they're not a party? So I think, Your Honor, what the immediate intervener sought to do was come in and change the protective order. So they weren't coming in saying, we'd like to be a plaintiff. They weren't coming in and saying, we think we should be sued. But they were coming in to say, we're submitting to the jurisdiction of the court to talk about documents we'd like you to give us. And the court said, okay, you can be in the court and we'll talk about that. And for a while, the court said, you can't have the documents, and then it changed its mind. But it cannot be the case. It just cannot be the case as a matter of law, conceptually, that someone can be before the court and say, the court has no power to reach me on the very thing I'm talking about. On the very issue that they raised to allow them to intervene. I'm right there with you. Okay. It would be a dangerous moment in the law where the court could only aid and not order on parties before it. I think we have your, I'll give you 30 seconds here if you have something really, really important to say, but I think we have your argument. I appreciate your honor's time and courtesy in giving me extra time. And we'd ask that the court reverse both cases. Thank you to all the counsel. Very interesting cases. Very helpful argument this morning. And that wraps up our day-to-day. The court will come back tomorrow slightly differently configured. All rise.
judges: VANDYKE, JOHNSTONE, Christensen